**In re O.W. HUBBELL & SONS, INC., Debtor.**

No. 94–CV–1325.

United States District Court, N.D. New York.

March 27, 1995.

Harter, Secrest & Emery (Brian V. McAvoy, of counsel), Rochester, NY, for Syro, Inc.

Menter, Rudin & Trivelpiece (Joseph N. Bulko, of counsel), Syracuse, NY, for O.W. Hubbell & Sons, Inc.

Hancock & Estabrook (R. John Clark, Michael C. Griffen, of counsel), Syracuse, NY, for Mellon Bank.

**MEMORANDUM, DECISION & ORDER**

McAVOY, Chief Judge.

## I. BACKGROUND

On October 25, 1990, Syro, Inc. ("Syro") filed a claim in the amount of $1,861,733.82 in this Chapter 11 bankruptcy action against O.W. Hubbell & Sons, Inc., ("Hubbell"). Syro claims that Hubbell owed this amount for the purchase of guardrails and accessories from Syro. On July 8, 1993, Hubbell filed and allegedly served a motion to expunge Syro's claim. Syro claims that it was never served with these papers, and so, did not appear and object to Hubbell's motion at a hearing held on August 24, 1993.

Because of Syro's failure to appear and object to Hubbell's motion, the bankruptcy court signed an order expunging Syro's claim. That order was never served upon Syro. It did not discover that the bankruptcy court had expunged its claim until April 6, 1994, and on April 25, 1994, it filed a motion with the bankruptcy court seeking reconsideration and reinstatement of its claim. On September 22, 1994, following oral argument, Judge Stephen D. Gerling of the U.S. Bankruptcy Court for the Northern District of New York issued an order denying Syro's motion for reconsideration and reinstatement ("September 22nd Order"). The judge found that Syro's failure to object to the debtor's motion was not the result of excusable neglect.

Syro now appeals this denial of reconsideration and reinstatement. Hubbell has filed opposition to this reconsideration motion as has Mellon Bank ("Mellon") who holds both an unsecured and a secured claim against Hubbell. Both of these parties opposed the original motion for reconsideration and reinstatement of the claim addressed by Judge Gerling in his September 22nd Order.

## II. DISCUSSION

A district court's jurisdiction to review the final judgments and orders of bankruptcy judges in found at 28 U.S.C. § 158(a). In reviewing the final decision of a bankruptcy court, the district court uses a *de novo* standard for examining conclusions of law and a clearly erroneous standard for examining conclusions of fact. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990).

In this case, Judge Gerling decided that Syro had not rebutted the presumption that the mailing of a notice raises the assumption that the addressee received it and acquired notice of its contents. September 22nd Order at 9. After arriving at this holding, he then focused on whether Syro had shown excusable neglect for its failure to respond to Hubbell's motion. In doing so, Judge Gerling applied the standard set forth in Fed. R.Civ.P. 60(b), which is incorporated by reference in Fed.R.Bankr.P. 9024, to determine whether Syro had shown cause to reconsider its previously dismissed bankruptcy claim pursuant to § 502(j) of the Bankruptcy Code. The Judge first found that Syro had not shown the existence of "extraordinary circumstances" which would justify relief from the operation of judgment pursuant to Fed. R.Civ.P. 60(b)(6). Then, using the flexible test for excusable neglect established in *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Judge concluded that Syro had shown inexcusable indifference to the bankruptcy process which did not fall under the guise of excusable neglect. Thus, Judge Gerling refused to reconsider the reinstatement of Syro's claim.

### A. Presumption of Service

Syro now asserts that the bankruptcy court failed to take into consideration the evidence it submitted as an attempted rebuttal to the presumption that mailing shows receipt of the notice. In the initial motion for reconsideration, Syro included, and now refers, to an affidavit by Harry A. Syak, president of Syro, which states that he never received notice of the debtor's motion to expunge Syro's claim. Syro points to a statement on page 9 of the September 22nd Order as evidence that the bankruptcy court failed to consider the Syak affidavit. That statement reads, "in the absence of any evidence to the contrary, mailing of a notice raises a presumption that the addressee received it and thus acquired knowledge of its contents." However, the court finds this argument difficult to embrace considering the

fact that Judge Gerling refers to the Syak affidavit at page 6 of the Order and the fact that the context of the statement on page 9 shows that the court considered rebuttal evidence provided by Syro. The Order states on page 9 that "Syro has suggested that the postal service may not have even delivered the Debtor's motion." Thus, it is clear that the bankruptcy court considered and rejected Syro's rebuttal evidence on this issue.

■ Additionally, Syro now argues that the bankruptcy court made erroneous findings of fact and failed to apply the correct legal standard to this portion of its decision. Hubbell claims that it mailed a copy of its motion papers to Syro on July 8, 1993, and as evidence, submitted an affidavit of service which certifies that such copies were mailed to 51 entities on an annexed service list, including Syro. Hubbell did not offer evidence of the office procedures followed with respect to the mass mailing of bankruptcy papers.

Syro claims that the bankruptcy court erroneously relied only on the affidavit of service to establish the presumption of receipt although the law requires that office procedures also be shown to create the presumption. Moreover, Syro argues that Syak's affidavit stating that it was the procedure at Syro that any notices regarding the debtor be immediately brought to his attention, and that no such notice was brought to his attention regarding the motion to expunge, rebuts the presumption in this case.

Syro relies on *Leon v. Murphy*, 988 F.2d 303 (2d Cir.1993), *Meckel v. Continental Resources Co.*, 758 F.2d 811 (2d Cir.1985), and *United States v. Jack Cozza, Inc.*, 106 F.R.D. 264 (S.D.N.Y.1985) for the principle that an affidavit of service must be accompanied by evidence of the mailer's standard office procedures and proof that those procedures were followed in order to create a presumption that the notice was received. However, none of these cases states that this is the evidentiary requirement under federal law. Both *Leon* and *Meckel* note that New York law requires such a showing, but do not establish the same standard in federal cases. *Cozza* simply relies on *Meckel* and states that

a mailing by standard office procedure creates a presumption of receipt.

■ Other federal cases clearly reiterate the standard expressed in *Cozza*, that a presumption of receipt may be established by a showing of proper mailing. *See, e.g., In re Alexander's, Inc.*, 176 B.R. 715, 721 (Bankr. S.D.N.Y.1995); *In re Horton*, 149 B.R. 49, 57 (Bankr.S.D.N.Y.1992); *In re Bicoastal Corp.*, 126 B.R. 613, 615 (Bankr.M.D.Fla.1991). "Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is presumed to have been received by the party to whom it was addressed." *In re Randbre Corp.*, 66 B.R. 482, 485 (Bankr.S.D.N.Y.1986). Many of these cases show that an affidavit of service is sufficient evidentiary material to raise the presumption. *See In re Horton*, 149 B.R. at 57 (stating that the debtor may invoke the presumption of receipt after proper mailing based on a certificate stating that a notice was mailed to every creditor on a list, including the creditor in question); *In re Alexander's, Inc.*, 176 B.R. at 721 (raising the presumption by submitting an affidavit by the employee who mailed the letter that she did so on a particular date and sent it to a particular address). In fact, other cases have stated that the presumption that a properly addressed letter that is mailed has been received can be shown *either* by the testimony of the person who actually mailed the letter *or* by indirect evidence such as a showing that the mail was sent through regular office procedures. *Capital Data Corp. v. Capital Nat'l Bank*, 778 F.Supp. 669, 675 (S.D.N.Y.1991). A showing of both types of evidence is not necessary to raise the presumption. Thus, Syro's legal argument is meritless.

■ Moreover, Syro cannot rebut the presumption simply by way of an affidavit denying that the notice was received. Case law makes clear that affidavits of employees denying receipt of notice are not sufficient to rebut the presumption of receipt. *In re Alexander's, Inc.*, 176 B.R. at 721; *In re Horton*, 149 B.R. at 58; *In re R.H. Macy & Co.*, 161 B.R. 355, 360 (Bankr.S.D.N.Y.1993) (noting that if affidavits containing only general denials of receipt of notice were allowed to defeat the presumption of receipt of notice

arising from the certificate of mailing, the bankruptcy process would become unraveled). In light of this case law, the court cannot hold that the bankruptcy court erred in finding that Syro received notice of the debtor's motion to expunge its claim. It appears that the bankruptcy court gave the proper weight, i.e. none, to the affidavit of Mr. Syak, and reached the correct conclusion, that the presumption of receipt had not been overcome.

## B. Excusable Neglect

■ While agreeing with the bankruptcy court's decision to apply the standard for excusable neglect found in *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership, supra,* Syro claims that such application should have resulted in reinstatement of its claim. Hubbell and Mellon argue that the *Pioneer* standard should not have been applied at all, but agree with the bankruptcy court's final decision to deny reinstatement of the claim.

Despite Hubbell and Mellon's argument, the court finds that Judge Gerling correctly applied the *Pioneer* standard for excusable neglect. In keeping with his previous reasoning in *In re Mowers,* 160 B.R. 720 (N.D.N.Y.1993), Judge Gerling adopted a Ninth Circuit distinction between the two excusable neglect standards. That is:

> excusable neglect is generally liberally construed 'in those instances where the order or judgment forecloses trial on the merits of a claim,' such as a motion to set aside a default judgment under Fed.R.Civ.P. 60(b). [citation omitted]. Where, however, the purpose of the extension sought is to review the propriety of a decision on the merits, such as in the context of a late filed notice of appeal, the term excusable neglect must be strictly interpreted. [citation omitted].

*Id.* at 724, *quoting, In re Dix,* 95 B.R. 134, 137–38 (9th Cir. BAP 1988). Applying this logic to the case at hand, the court finds that Judge Gerling correctly applied the *Pioneer* standard since the order expunging Syro's claim foreclosed an examination of its merits.

■ The less stringent *Pioneer* standard for excusable neglect is an equitable determi-nation that examines "all relevant circumstances surrounding the party's omission" including: (1) "danger of prejudice to the debtor"; (2) "the length of delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1498.

In examining these factors, the bankruptcy court concluded that excusable neglect had not occurred. It noted that no true prejudice to the debtor existed as a result of the failure to respond to the motion to expunge Syro's claim. The bankruptcy court also noted that seven months elapsed between the time Syro's claim was expunged and the time it sought reconsideration but did not appear to find that the delay would have a detrimental impact on judicial proceedings since four additional annual installments of funds to unsecured creditors remained to be distributed which Syro might take part in if its claim was found meritorious.

■ On the other hand, the bankruptcy court found that the excuse for the delay provided by Syro was not valid and was within Syro's reasonable control. Syro blamed a corporate restructuring, which included downsizing and the departure of the credit manager responsible for monitoring the Hubbell case, for the failure to object to the motion to expunge. The bankruptcy court dismissed this as a reasonable excuse because the restructuring took place six to seven months before Hubbell filed the motion to expunge. Additionally, the court noted that these same corporate changes did not prevent Syro from commencing a suit in state court and continuing other suits during this time period. The court also noted that Syro had an obligation to insure that proper office procedures were in place to ensure that pleadings were brought to the attention of counsel once received by the company. Furthermore, the court noted that Hubbell was not required to provide Syro with a copy of the order expunging its claim due to Syro's default. In discussing the good faith factor, the court found that Syro may not

have acted in good faith, as evidenced by its indifference to the bankruptcy procedures, and considering the fact that it only sought relief from the order expunging its claim due to the possible prejudice it might cause in pending state court proceedings. Thus, it found no excusable neglect.

■ After a review of the record on appeal, the court finds that the bankruptcy court's determination that Syro's failure was inexcusable is fully supported by the facts and the applicable law. Applying the above-mentioned facts to the factors set forth in *Pioneer*, Syro has not made a showing of excusable neglect. The *Pioneer* case does not express a requirement that each factor be unmet in order to find no excusable neglect. *Pioneer* merely requires an equitable examination of all relevant circumstances. *Pioneer*, ── U.S. at ──, 113 S.Ct. at 1498. In examining all the circumstances surrounding Syro's failure to object to the motion to expunge, the court finds Judge Gerling's decision is not clearly erroneous.

■ The court also rejects Syro's argument that Hubbell abused the bankruptcy process by leading Syro to believe that its claim would be litigated in state court, for it was Syro who submitted to the jurisdiction of the bankruptcy court by filing its Proof of Claim. In doing so, Syro should have been well aware that the merits of its claim could be decided by the bankruptcy court. The court also finds a factual distinction between the situation presented in this case and that in *In re Schlosser*, 100 B.R. 348, 350 (Bankr. S.D.Ohio 1989) where a corporate restructuring was considered excusable neglect for a party's failure to file a timely response to an objection. In that case, which the court noted was a close decision, the corporate restructuring took place at the same as the objection was filed and served while here the restructuring took place several months before the motion in question was even filed. Thus, the differing facts in these two cases warrant different results.

Similarly, the court finds that *In re International Home Design, Inc.*, 28 B.R. 584 (Bankr.W.D.Mo.1983) is also inapplicable to the case at hand. There, the bankruptcy court granted a motion for reconsideration and reinstatement of a claim finding that the creditor's assertion that it received no notice of the objection to its claim was credible. Here, as discussed previously, both the bankruptcy court and this court have found that Syro has not overcome the presumption that it received notice of the motion to expunge, and so the cases differ factually.

Additionally, Syro points to *In re Resources Reclamation Corp.*, 34 B.R. 771 (9th Cir. BAP 1983) which considered, along with the factors used in the *Pioneer* case, whether the creditor's claim was meritorious in deciding whether to reinstate a claim that had been dismissed. *Id.* at 774. However, based on the record in this case, it is impossible for the court to examine the merits of Syro's claim since it was dismissed for Syro's failure to object without an examination of the merits and on reconsideration by the bankruptcy court the merits were again not reached. Additionally, even if this court were somehow able to examine the merits of Syro's claim, the fact still remains that several other factors of the *Pioneer* test weigh against a finding of excusable neglect.

In sum, the court finds that even under the less stringent standard of *Pioneer*, the bankruptcy court was correct as a matter of fact and as a matter of law in determining that Syro's neglect to answer Hubbell's motion to expunge Syro's claim was not excusable. The court also finds that the bankruptcy court applied the correct law and reached a factual conclusion which was not clearly erroneous in deciding that Syro did not rebut the presumption of receipt of the motion to expunge. The court, therefore, upholds the bankruptcy court's order dated September 22, 1994 and denies Syro's appeal.

**IT IS SO ORDERED.**